FILED
IN OPEN COURT

JUL 20 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.

SEIR ROBINSON HAVANA,

Defendant.

Case No. 1:22-cr-00116

STATEMENT OF FACTS

The United States and the defendant, SEIR ROBINSON HAVANA (hereinafter, "the defendant"), stipulate that the allegations in the two-count Criminal Information and the following facts are true and correct. The United States and the defendant further agree that had the matter gone to trial, the United States would have proven the allegations in the Criminal Information and the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From in or about April of 2019 and continuing through in or about November of 2021, in the Eastern District of Virginia and elsewhere, the defendant SEIR ROBINSON HAVANA did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with Quin Ngoc Rudin, and with other persons known and unknown to: (1) defraud the United States; and (2) commit an offense against the United States, namely wire fraud, in violation of 18 U.S.C. § 1343, in any manner and for any purpose, and that one or more of such persons did any act to effect the objects of the conspiracy, all in violation of 18 U.S.C. § 371.

2. The conspiracy had two objects. The first object was to impede, impair, obstruct, and defeat the lawful government functions of the Internal Revenue Service ("IRS") of the Department of the Treasury in the ascertainment, computation, assessment, and collection of federal income taxes by preparing and filing false tax returns on behalf of professional athletes

1

seeking large tax refunds to which the athletes were not entitled. The second object was to devise and intend to devise a scheme and artifice to obtain money from financial institutions by submitting materially false applications for loans financed by the federal Paycheck Protection Program ("PPP") and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud, in violation 18 U.S.C. § 1343.

3. It was a purpose of the conspiracy that the defendant and his co-conspirators obtained and tried to obtain large fees from the professional athletes for whom they obtained income tax refunds, often in the amount of 30% of the fraudulent tax refunds obtained.

4. Additionally, one of the purposes of the conspiracy was for the defendant and his co-conspirators to enrich themselves by obtaining PPP loan funds for businesses in amounts for which the businesses did not qualify by grossly overstating the number of employees the businesses employed and by grossly overstating the businesses' payroll expenses. It was a further purpose of the conspiracy for the defendant and his co-conspirators to obtain PPP loans for businesses that did not exist before February 15, 2020, and did not have any actual employees or payroll expenses, and were therefore unqualified for the program. Finally, it was a purpose of the conspiracy that the defendant and his co-conspirators obtained and tried to obtain fees from the business owners for whom they obtained PPP loans successfully, often in the amount of 30% of the PPP loans obtained.

5. On or about June 18, 2020, in the Eastern District of Virginia and elsewhere, defendant SEIR ROBINSON HAVANA did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity; that is, the conspiracy to defraud the United States and

to commit wire fraud, in violation of 18 U.S.C. § 1343, as alleged in count 1 of this Information, all in violation of 18 U.S.C. § 1957.

6. More specifically, on or about June 18, 2020, the defendant obtained a cashier's check from Gulfstream Exchange's bank account at Financial Institution-6, which was made payable to Company 32 in the amount of $250,000. The source of these funds was a fraudulent PPP loan the co-conspirators previously obtained on May 12, 2020, for MANA TAX in the amount of $730,932. The defendant provided this $250,000 cashier's check to UCC-3 for referring Company 3 and Company 4 to MANA TAX to obtain PPP loans.

## Background

7. The defendant was a pilot by training and earned income from flying jets for private clients. The defendant met co-conspirator Quin Ngoc Rudin ("Rudin") around 2010 while working as a pilot.

8. During the course of the conspiracy, the defendant worked with Rudin, UCC-1, UCC-3, UCC-4, among others.

9. UCC-1 prepared and assisted in the preparation of tax returns that were filed with the IRS and used to obtain fraudulent PPP loans.

10. UCC-3 owned a mortgage business which he ran under the name of Company 30. UCC-3 also controlled the shell company Company 32.

11. UCC-4 was self-employed in the entertainment industry representing musical groups and performing artists.

12. UCC-3 and UCC-4 recruited businesses to have PPP loans prepared by MANA TAX.

3

13. The defendant knew, but concealed from others, that Rudin was a convicted felon and was under court supervision during a portion of their participation in the conspiracy. The defendant told others that Rudin used to work for the IRS and was knowledgeable about tax preparation in order to enhance his credibility.

14. The defendant and Rudin agreed that the defendant would be the "boss" on paper and the face of the business to the public, but Rudin ran the operation and had the final say on decisions.

15. The defendant and Rudin discussed opening a tax preparation business. Toward that end, Rudin eventually incorporated Robinson & Associates and Mana Tax Services ("MANA TAX"). In May 2018, the defendant was listed as an officer and director of MANA TAX with the Secretary of State of Hawaii. UCC-1 was to be a principal of the company.

16. In order for a tax preparation firm to electronical file tax returns with the IRS, it must have an Electronic Filer Identification Number ("EFIN"). In August 2018, Rudin applied for an "EFIN' in the name of UCC-1 for MANA TAX to use.

17. The defendant was affiliated with Gulfstream Exchange, Incorporated ("Gulfstream Exchange"), a corporate entity he formed in Hawaii in 2018. The defendant was the sole signatory on various bank accounts that he opened for Gulfstream Exchange between 2018 and 2021. The defendant and Rudin represented that MANA TAX and Robinson & Associates were subsidiaries of Gulfstream Exchange.

18. In furtherance of the conspiracy, the defendant held himself out as the Chief Executive Officer ("CEO") and Rudin held himself out as the Chief Financial Officer ("CFO") of Gulfstream Exchange.

19. The defendant knew that during the conspiracy, Quin Rudin falsely represented to

others that Gulfstream Exchange was a global aviation company with lots of employees that provided business owners with access to jet planes.

20. Company 36 purported to be a non-profit organization with its principal place of business in Leesburg, Virginia.

21. The defendant was also affiliated with a number of other corporate entities, including Summerwind Management, Community Investment Corporation ("CIC"), CIC Global and Seir & Sire. In addition to using these entities as payees to receive the 30% fee for tax refunds from the professional athletes and from businesses for their PPP loan applications, the conspirators listed a number of these entities on fraudulent PPP loan applications. At the direction and under the supervision of Quin Rudin, members of the conspiracy made false and fraudulent statements about the businesses and submitted false and fraudulent tax documents prepared by MANA TAX in order to get the loans.

22. In furtherance of the conspiracy, the defendant opened numerous bank accounts for corporate entities he controlled at numerous financial institutions and was often the sole signatory on the accounts.

23. The conspirators earned fees paid by the MANA TAX clients, typically 30% of the value of the unlawful tax refunds the IRS paid to the professional athletes or 30% of the amount of PPP loans funded. The fees the defendant obtained included, at least, the following:

   a. $3,183,585.33 in fees paid by professional athletes for their fraudulent IRS tax refunds obtained by MANA TAX and deposited into entities controlled by the defendant.

   b. $3,966,914.00 in fees paid by other business entities to entities which the defendant controlled, for the fraudulent PPP loans applied for by MANA TAX.

24. Additionally, during and in the course of his participation in the conspiracy, the amount of PPP loans that the defendant assisted in obtaining was approximately $24,707,323.

5

This figure represents the amount of loans obtained by corporate entities controlled by the defendant; entities for which he was the signatory on the bank account; entities with whom he had significant contact; and those small businesses owned and operated by other individuals, but recruited by UCC-3 and UCC-4 as clients for MANA TAX.

25. During and in furtherance of his participation in this conspiracy, the defendant personally obtained at least approximately **$6,182,446** in criminal proceeds from the PPP loan fraud scheme for loans funded where he defendant was listed as the applicant. This money was deposited into bank accounts he controlled, directly or indirectly, and is traceable to the PPP loan fraud scheme.

26. From February 2021 through October 2021, the defendant withdrew approximately **$1,004,800.00** in cash from bank accounts held in the names of Gulfstream Exchange and Robinson & Associates.

27. In furtherance of his cooperation, the defendant surrendered to the United States approximately **$5,615,875** in cashier's checks. These checks were made payable to Summerwind Management, CIC Global and Gulfstream Exchange and account for a portion of the 30% fee the clients owed to MANA TAX. These funds were obtained from two primary sources. First, the defendant surrendered cashier's checks, representing the 30% fee charged, paid to the defendant's entities by the professional athlete clients of MANA TAX. Next, the defendant surrendered checks from business entities representing the 30% fee to MANA TAX for obtaining the PPP loans fraudulently. The defendant controlled many of those entities by being a signatory to bank accounts held in their names.

<u>The Fraudulent Tax Return Scheme for Professional Athletes</u>

28. The defendant and the co-conspirators, through MANA TAX, assisted in the

preparation and filing of false income tax returns on behalf of a number of professional athletes. These tax returns all reported substantial business losses and claimed large tax refunds from the IRS to which the athletes were not entitled. The defendant and the co-conspirators charged the athletes a 30% flat fee based on the amount of the income tax refund obtained from the IRS.

29. The defendant worked to recruit the professional athletes to have MANA TAX prepare their tax returns. Toward that end, the defendant, Rudin and the co-conspirators represented to the professional athletes that Rudin was knowledgeable and experienced in the preparation of tax returns. The defendant and Rudin represented that MANA TAX could obtain large refunds for the athletes and that Rudin had specialized knowledge that their prior CPAs and tax professionals did not have.

30. In or about May 2019, the defendant, Quin Rudin and UCC-3 met with Professional Athlete-7 in the greater Los Angeles, California area. Quin Rudin and the defendant represented that MANA TAX could obtain tens of millions of dollars in federal income tax refunds. During this time, Professional Athlete-7 agreed to have MANA TAX prepare his tax returns.

31. In or about June and/or July 2019, the defendant along with Rudin, UCC-1, UCC-3, and others flew to Leesburg, Virginia to meet with Professional Athlete-7. During this visit, at least one co-conspirator discussed with Professional Athlete-7 his tax returns and that MANA TAX would seek millions of dollars in tax refunds on his behalf from the IRS.

32. In addition, the conspirators discussed with Athlete-7 the possibility of referring other professional athletes to MANA TAX for tax return preparation services. At the co-conspirators request, Professional Athlete-7 spoke to other professional athletes at their practice facility located in the Eastern District of Virginia. In addition, Professional Athlete-7 spoke to other athletes on the phone, and texted with other athletes about MANA TAX. Some of these

communications occurred while at least one of the athletes was in the Eastern District of Virginia. Ultimately, several other professional athletes whom Professional Athlete-7 spoke to engaged MANA TAX to prepare their tax returns.

33. The athletes dealt primarily with the defendant and sometimes with Quin Rudin. In that regard, the defendant would text, email, or have phone calls with the athletes about the preparation of their tax returns and claims for refunds. Because Rudin had the tax knowledge, the defendant normally directed the athletes to Rudin to answer any tax-specific questions.

34. UCC-1, at the direction of Quin Rudin, filed new income tax returns for the professional athlete clients and also filed amended income tax returns for past years. Rudin explained to the athletes that he would file the amended returns to correct what he falsely characterized as "errors" the athletes' previous accountants made, many of whom, if not all, were Certified Public Accountants. Other members of the conspiracy assisted in the preparation of these tax returns on behalf of MANA TAX.

35. The defendant, UCC-1 and Quin Rudin, willfully aided and assisted in the preparation and presentation to the IRS of Forms 1040, U.S. Individual Income Tax Returns, and Forms 1040-X, Amended U.S. Individual Income Tax Returns, for the taxpayers and calendar years set forth below, knowing full well that the returns were false and fraudulent as to material matters in order to obtain refunds to which the taxpayers were not entitled, including at least the following:

| Taxpayer | Approximate Filing Date | Form | Year | Refund Issued |
|---|---|---|---|---|
| Professional Athlete 1 | 9/4/19 | 1040 | 2017 | $1,623,600 |
| Professional Athlete 2 | 10/15/19 | 1040 | 2018 | $4,559,703 |
| Professional Athlete 2 | 5/31/21 | 1040 | 2019 | $3,793,420 |
| Professional Athlete 3 | 10/16/20 | 1040 | 2019 | $1,888,888 |
| Professional Athlete 4 | 9/17/19 | 1040-X | 2018 | $481,299 |
| Professional Athlete 4 | 11/16/20 | 1040 | 2019 | $635,616 |

8

| Taxpayer | Approximate Filing Date | Form | Year | Refund Issued |
|---|---|---|---|---|
| Professional Athlete 5 | 11/30/20 | 1040 | 2019 | $1,325,326 |
| Professional Athlete 5 | 12/14/20 | 1040 | 2018 | $1,179,279 |
| Professional Athlete 7 | 11/30/20 | 1040 | 2019 | $4,081,626 |
| Professional Athlete 8 | 8/10/20 | 1040 | 2019 | $104,966 |
| Professional Athlete 9 | 10/13/20 | 1040 | 2019 | $458,511 |
| TOTAL | | | | $20,132,234 |

36. In addition to recruiting the professional athletes, the defendant instructed the athletes how to pay the 30% fee. In order to conceal the payments received, the defendant directed the payments be made to entities other than MANA TAX that he controlled.

37. The professional athletes identified below paid the co-conspirators at least the following fees:

| Taxpayer | Date Fee Paid | Refund Requested | Fee Paid |
|---|---|---|---|
| Professional Athlete 1 | 3/10/2020 | $1,623,600 | $480,000 |
| Professional Athlete 2 | 8/8/20 | $4,559,703 | $1,367,911.03 |
| Professional Athlete 3 | 1/4/21 | $1,888,888 | $566,666.70 |
| Professional Athlete 4 | 10/21/2020 | $481,299.00 | $144,389 |
| Professional Athlete 4 | 11/27/20 | $635,616 | $190,684 |
| Professional Athlete 5 | 1/11/21 | $1,179,279 | $403,933.80 |
| Professional Athlete 8 | 8/8/20 | $104,966 | $30,000 |

## Fraudulent PPP Loans

38. During the course of the conspiracy, the defendant and his co-conspirators filed and caused to be filed a number of false and fraudulent PPP loan applications with various financial institutions which resulted in the funding of millions in fraudulent loans. The defendant and his co-conspirators, through MANA TAX, collected fees from some of the applicants, which equaled approximately 30% of the face value of the funded loan.

39. The defendant and Rudin encouraged and relied on UCC-3 to recruit small business owners that UCC-3 knew from his mortgage business to become clients of MANA TAX. UCC-3 acted as an intermediary between MANA TAX and the clients, many of whom were not fluent

9

in English, by communicating on their behalf with Rudin and the defendant.

40. UCC-4 was self-employed in the entertainment industry representing musical groups and performing artists. UCC-4 referred a number of his own clients to MANA TAX to obtain PPP loans.

41. The defendant also authorized or caused the filing of fraudulent PPP loan applications in the name of corporate entities he controlled, directly or indirectly, including Gulfstream Exchange, CIC and Company 36. The application falsely stated that HAVANA was the President and 100% owner of Company 36. The amount of fraudulent loan proceeds obtained by entities under the defendant's control totaled approximately **$6,182,446,** and these funds were disbursed directly into bank accounts the defendant controlled.

42. The defendant and his co-conspirators submitted knowingly, assisted in the submission of, and caused to be submitted a number of PPP loans, including the following, which had material false representations which were relied upon by the financial institutions and the SBA in authorizing the disbursement of funds:

| PPP Loan Applicant | Listed Authorized Representative | Date submitted (on or about) | Loan amount funded |
|---|---|---|---|
| Company 34 | Person U | 4/24/2020 | $273,437 |
| Company 1 | Person A | 5/5/2020 | $520,832 |
| Gulfstream Exchange Incorporated | SEIR HAVANA | 5/8/2020 | $1,752,130 |
| Mana Tax Services, Inc. | UCC-1 | 5/8/2020 | $730,932 |
| Company 48 | SEIR HAVANA | 5/13/2020 | $478,822 |
| Company 2 | Person B | 5/14/2020 | $776,040 |
| Company 49 | Person V | 5/15/2020 | $745,586 |
| Company 3 | Person C | 6/4/2020 | $703,391 |
| Company 4 | Person D | 6/5/2020 | $1,512,290 |
| Company 24 | UCC-4 | 6/15/2020 | $1,849,513 |
| Company 50 | UCC-4 | 6/15/2020 | $1,387,135 |
| Company 22 | Person W | 6/23/2020 | $1,838,222 |

| PPP Loan Applicant | Listed Authorized Representative | Date submitted (on or about) | Loan amount funded |
|---|---|---|---|
| Company 51 | Person K | 7/20/2020 | $ 260,125 |
| Company 26 | Person X | 7/24/2020 | $ 1,151,571 |
| Company 5 | Person E | 1/25/2021 | $ 1,995,642 |
| Company 14 | Person K | 3/12/2021 | $ 831,952 |
| Company 39 | Person K | 3/13/2021 | $ 200,130 |
| Company 40 | Person K | 3/15/2021 | $ 211,250 |
| Gulfstream Exchange Incorporated | SEIR HAVANA | 3/17/2021 | $ 1,971,682 |
| Company 35 | UCC-1 | 3/17/2021 | $ 1,963,552 |
| Community Investment Corporation | SEIR HAVANA | 3/18/2021 | $ 1,979,812 |
| Company 31 | Person S | 4/11/2021 | $ 861,847 |
| Company 47 | Person K | 4/13/2021 | $ 500,035 |
| Company 29 | Person T | 4/14/2021 | $ 211,395 |
| **TOTAL** | | | **$ 24,707,323** |

43. The banks sent data from the loan applications to the SBA, which were then processed by the SBA server in Sterling, Virginia, within the Eastern District of Virginia, to authorize the funding of the loans.

44. The defendant received a portion of the 30% PPP loan fee paid by various business entities for the fraudulent PPP loans that were funded after MANA TAX submitted false and fraudulent applications and tax records. The defendant and Rudin directed UCC-3 to tell the MANA TAX clients that UCC-3 recruited that they had to pay the 30% PPP loan fee to an entity other than MANA TAX. As the direction of the defendant and Rudin, these fees were often paid via cashier's checks. The defendant and Rudin told UCC-3 to instruct the clients to write false notations on the cashier's checks, such as "payroll" or "intercompany transfers" in order to conceal the true source of the funds.

45. During and in furtherance of the conspiracy, the defendant obtained approximately **$3,966,914** in fraudulent loan proceeds through the 30% PPP loan fee paid to MANA TAX. The

defendant directed the deposit of these fees into bank accounts for entities that he controlled, directly or indirectly, such as Gulfstream Exchange.

46. After the PPP loan proceeds were deposited into bank accounts controlled by the defendant, the defendant conducted further financial transactions with the funds in order to conceal and disguise the nature, source and ownership of the funds. Typically, the defendant directed that the funds be transferred into other bank accounts that he controlled, including Gulfstream Exchange, CIC Global and MANA TAX. Many of those transactions were in amounts greater than $10,000.

47. As discussed above in paragraph 42, all of the below referenced PPP loans were fraudulently submitted as part of the conspiracy and included material misstatements.

Financial Transactions Involving Round One PPP Loans

48. On or about May 12, 2020, Financial Institution-2 funded the MANA TAX PPP loan for $730,932 and deposited the proceeds into a Financial Institution-2 account for MANA TAX (x9865) that the defendant and UCC-1 controlled. Thereafter, the defendant conducted the following financial transactions out of that account:

   a. A cashier's check for $438,000 made payable to MANA TAX and deposited into a Financial Institution-5 account in the name of MANA TAX by Quin Rudin on July 10, 2020;

   b. Two payments totaling $50,000 to Company 32, an entity controlled by UCC-3; and

   c. A $250,000 cashier's check made payable to another conspirator.

49. On or about May 13, 2020, Financial Institution-2 funded the Gulfstream Exchange PPP loan for $1,752,130, and deposited the proceeds into a Financial Institution-2 account for Gulfstream Exchange (x7154) that the defendant controlled. The defendant then caused the following financial transactions to be made from the Gulfstream Exchange account (x7154):

  a. A wire transfer to CIC Global's account at Financial Institution-2 (x3397) for $1,050,000;

  b. The purchase of 3 cashier's checks for a total of $650,000 made payable to Gulfstream Exchange; and

  c. The withdrawal of $39,000 in cash.

50. On or about May 18, 2020, Financial Institution-2 funded a Company 2 PPP loan for $776,040, and deposited the loan proceeds into a Company 2 account at Financial Institution-2. Then, the defendant or Quin Rudin caused the transfer of $762,500 out of that account and into another Company 2 account that the defendant controlled at Financial Institution-2. On or about June 15, 2020, the defendant directed the movement of the fraudulent PPP loan proceeds of the Company 2 account he controlled at Financial Institution-2 as follows:

  a. $369,300 was transferred to CIC Global's account at Financial Institution-2;

  b. $32,359 was transferred to MANA TAX's account at Financial Institution-2; and

  c. A $225,000 cashier's check made payable to Gulfstream Exchange.

51. On or about June 15, 2020, the defendant and Quin Rudin also withdrew $1,000 from Gulfstream Exchange's account at Financial Institution-2.

52. On or about June 18, 2020, the defendant obtained a cashier's check from Gulfstream Exchange's account at Financial Institution-6 made payable to Company 32 in the amount of $250,000. The source of these funds was the fees paid by Company 3 and 4 for their fraudulently obtained PPP loans. The defendant gave this $250,000 cashier's check to UCC-3 for referring Company 3 and Company 4 to MANA TAX.

53. Then, into the same account that received the $369,000 and the $1,050,000 referenced above in paragraphs 49(a) and 50(a), on or about June 25, 2020, the defendant deposited a cashier's check from Company 22 for $551,466, into the CIC Global account at Financial

Institution-2. This $551,466 payment was the 30% fee from the owner of Company 22. The cashier's check noted falsely on the memo line that the payment was for "Inter Company Payroll Expenses."

54. On or about June 26, 2020, the defendant obtained a $150,000 cashier's check made payable to Company 32, from the CIC Global's account at Financial Institution-2, which received the $369,000, $1,050,000 and $551,466. The defendant gave this $150,000 check to UCC-3 for referring Company 22 to MANA TAX to obtain a fraudulent PPP loan. Then, three days later, on or about June 29, 2020, the defendant obtained a cashier's check from the CIC Global, Inc. account at Financial Institution-2 for nearly the remaining funds totaling $1,821,521.

55. On or about July 7, 2020, UCC-4 gave HAVANA a cashier's check for $554,883.90 from an account held by Company 24 at Financial Institution-2 and payable to Summerwind Management. This check represented the MANA TAX fee for obtaining a PPP loan for Company 24, a company referred by UCC-4. In furtherance of his cooperation, HAVANA surrendered this check to the government.

56. During the first round of PPP loans, approximately eleven companies that received fraudulent inflated PPP loans prepared by MANA TAX paid a 30% fee (based on the value of the loan amount) to corporate entities the defendant controlled, such as Gulfstream Exchange, CIC Global, Summerwind Management and Company 21.

57. The total amount of fees paid to these entities the defendant controlled was approximately $3,966,914. These payments were typically made with cashier's checks with false notations on the memo lines. Knowing that these fees represented the proceeds of the fraudulently obtained PPP loans, the defendant conducted financial transactions to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the fraud.

Financial Transaction Involving Round Two PPP Loans

58. On or about March 19, 2021, members of the conspiracy obtained a PPP loan for CIC from Financial Institution-4 in the amount of $1,979,812. Within days, the defendant disbursed approximately $1,180,388 to MANA TAX and $797,740 to Company 19, a company controlled by another conspirator. For one of the transactions, the defendant issued a check from CIC to MANA TAX for $586,444 and noted falsely on the memo line the check was for "payroll services."

59. On or about March 29, 2021, the defendant obtained a cashier's check for $100,000 from the Gulfstream Exchange account at Financial Institution-4. The check was made payable to Company 30 and was funded by a fraudulent PPP loan obtained by MANA TAX for Gulfstream Exchange. The defendant gave this check to UCC-3 for referring a number of clients, including Company 5, to MANA TAX to get PPP loans.

60. During his participation in the conspiracy, the defendant deposited numerous cashier's checks into bank accounts that he controlled. Then, he conducted additional financial transactions with the PPP funds, such as by wire transfers, through and among other bank accounts he controlled.

61. The defendant knew that the purpose of these financial transactions was to conceal the nature, the location, the source, the ownership and the control of the proceeds obtained through the fraudulently obtained PPP loans.

62. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

63. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 7/20/22    By: _____
Kimberly M. Shartar
Kimberly R. Pedersen
Assistant United States Attorneys
David Zisserson
Assistant Chief, Tax Division

63.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:                          By: _____
Kimberly M. Shartar
Kimberly R. Pedersen
Assistant United States Attorneys
David Zisserson
Assistant Chief, Tax Division

16

63. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:                       By: _____
                                Kimberly M. Shartar
                                Kimberly R. Pedersen
                                Assistant United States Attorneys
                                David Zisserson
                                Assistant Chief, Tax Division

16

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, SEIR ROBINSON HAVANA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
SEIR ROBINSON. HAVANA

I am Edward M. Robinson, defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Edward M. Robinson, Esq.
Attorney for SEIR ROBINSON HAVANA

17